IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EDWARD A. BURKHARDT,

                Plaintiff,

v.

THE CITY OF STEVENS POINT, WISCONSIN,
GARY WESCOTT, LOUIS MOLEPSKE and
JOSEPH EUCLIDE,

                Defendants,

v.

SENTRY INSURANCE A MUTUAL COMPANY,

                Intervening Defendant.

OPINION AND ORDER

10-cv-121-slc

---

In this civil action for monetary relief, plaintiff Edward Burkhardt contends that the City of Stevens Point and three of its officials seized and destroyed two of his antique railcars without providing notice or compensation, thereby violating the takings clause of the Fifth Amendment and the due process clause of the Fourteenth Amendment. Defendants tendered their defense to their insurer, Sentry Insurance, which intervened in this suit in order to seek a declaration that it has no duty under its policy to defend or indemnify any of the defendants.

I am granting Sentry's motion.[1] As discussed below, defendants' alleged conduct was volitional, not accidental, which means that there is no initial grant of coverage under the policy. As a result, Sentry has no duty to defend or indemnify defendants against the allegations made in plaintiff's complaint. Having concluded that there is no initial grant of coverage under the policy, I do not reach Sentry's alternative argument that coverage is barred under the policy's "Intentional Acts" exclusion.

---

[1] In doing so, I have considered defendants' surreply (dkt. 36) and Sentry's response (dkt. 37). As explained below, however, the arguments raised therein are largely irrelevant.

ALLEGATIONS OF THE COMPLAINT

Plaintiff Edward A. Burkhardt is an adult resident of the state of Illinois and a former CEO of the Wisconsin Central Railroad. While serving as the CEO of Wisconsin Central, plaintiff purchased two antique railcars, an Amtrak 8024 (bar car) and an Amtrak 335 (Harvest Inn-dining car). Burkhardt stored the cars on railroad tracks located in the City of Stevens Point. Burkhardt stopped working for Wisconsin Central in August 1999. Sometime thereafter, Wisconsin Central moved Burkhardt's railcars to unused track located on undeveloped land owned by the City of Stevens Point.

On August 8, 2005, the Stevens Point Board of Public Works held a meeting attended by the city's mayor, defendant Gary Wescott, and the director of public works, defendant Joseph Euclide. One purpose of the meeting was to discuss the disposal of "abandoned" rail cars. Mayor Wescott moved to dispose of the rail cars by advertising them for salvage. The motion passed and Euclide was authorized to dispose of the cars.

On October 13, 2005, the city accepted a proposal from J.R. Larsen Co. for $3,250 to remove the two rail cars. About a week later, Dan Nieman, an unsuccessful bidder for the demolition project, wrote a letter to the city attorney, defendant Louis Molepske, regarding the bid process. Nieman stated in the letter that he had learned that Edward Burkhardt owned the railcars and that the cars "may have real value as collectors."

Between October 2005 and the end of 2007, the city and its contractors worked on demolishing and removing plaintiff's railcars. At no time did any of the defendants contact Burkhardt or attempt to notify him that the railcars were being destroyed.

Burkhardt learned somehow that his railcars had been destroyed because he filed this lawsuit. Burkhardt asserts two causes of action: first, defendants violated his right to due process when they seized and destroyed his property without providing him any notice or opportunity to be heard even though they knew he was the owner. Second, defendants illegally "took" his property when they solicited and allowed the destruction of his railcars without contacting him or paying just compensation. Plaintiff seeks pecuniary and punitive damages.

THE INSURANCE POLICY

Sentry issued a commercial general liability ("CGL") policy to the City of Stevens Point for the policy period January 1, 2007 to January 1, 2008. The policy contains these provisions:

1. INSURING AGREEMENT

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

   * * *

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period;

   * * *

2. EXCLUSIONS

This insurance does not apply to:

a. EXPECTED OR INTENDED INJURY

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

SECTION V – DEFINITIONS

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

OPINION

To determine whether an insurer has a duty to defend its insured, the court must compare the allegations contained within the four corners of the complaint to the terms of the insurance policy. *Radke v. Fireman's Fund Ins. Co.*, 217 Wis.2d 39, 43, 577 N.W.2d 366, 369 (App. 1998) (citing *Newhouse v. Citizens Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 835, 501 N.W.2d 1, 5 (1993)). When making this comparison, the underlying complaint is construed liberally and all reasonable inferences are drawn in favor of the insured, *Doyle v. Engelke*, 219 Wis.2d 277, 284, 580 N.W.2d 245, 248 (1998), with the insured receiving the benefit of any doubt. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis.2d 235, 266, 593 N.W.2d 445, 459 (1999) (citations omitted). To determine whether coverage exists under a particular policy, the court first ascertains whether the policy makes an "initial grant of coverage." *State Farm Fire & Cas. Co. v. Acuity*, 2005 WI App 77, ¶ 8, 280 Wis.2d 624, 695 N.W.2d 883. In the event an initial grant is triggered, then the

court looks to see if any exclusions apply. *Id*. Although doubts are resolved in favor of the insured, a court must be careful not to rewrite an insurance policy so as to provide coverage for a risk that "the insurer did not contemplate and for which it has not been paid." *Qualman v. Bruckmoser*, 163 Wis.2d 361, 365, 471 N.W.2d 282, 284 (App. 1991).

Sentry asserts that it has no duty under the CGL to defend the City of Stevens Point or the individual defendants in this action because the complaint fails to allege any property damage caused by an "occurrence." As noted above, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Reviewing this same policy language in other cases, the Wisconsin Supreme Court has found that the term "accident" means either:

> 1) "'[a]n unexpected, undesirable event' or 'an unforeseen incident' which is characterized by a 'lack of intention,'" *Doyle*, 219 Wis. 2d at 289, 580 N.W. 2d at 250 (quoting *The American Heritage Dictionary of the English Language* 11 (3rd ed. 1992)); or
>
> 2) "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." *Everson v. Lorenz*, 2005 WI 51 ¶15, 280 Wis. 2d 1, 12, 695 N.W.2d 298, 303, (quoting *Black's Law Dictionary* 15 (7th ed. 1999)).

The word "accident" refers to the injury-causing event itself, not the resulting injury. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 268 Wis. 2d 16, 39, 673 N.W. 2d 65 (2004) (citing *Black's Law Dictionary* at 15).

Defendants raise a number of arguments in their brief, but nearly all depend on the following premise: the destruction of Burkhardt's railcars was an "accident" because defendants did not mean to harm anyone, their decision was based on a mistake as to ownership and they

did not foresee that they would harm Burkhardt.[2] Sentry responds that the relevant question in determining whether an "accident" occurred is not whether defendants were negligent or intended to harm Burkhardt, but rather whether their alleged acts were volitional.

The law plainly is on Sentry's side. In *Everson*, the insured, a real estate developer, sold a lot to Everson after stating that the lot did not lie within a 100-year flood plain. When construction of Everson's home was thwarted by the discovery that his lot *did* lie within a flood plain, Everson sued Lorenz under various theories, including strict liability and negligent misrepresentation. Lorenz tendered its defense to his insurer, Pekin, which asserted that it had no duty to defend Lorenz because Everson's property damage did not result from an "occurrence" as required by the policy. As in this case, the policy at issue defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Lorenz argued that its misrepresentation constituted an "accident" because it had merely made a typographical mistake in filling out the Real Estate Condition report and that a reasonable insured would understand such negligence to be covered by the policy.

The court disagreed. In its view, the term "accident" was a narrow one that applied only to truly non-volitional conduct, as opposed to volitional acts prompted or preceded by negligence. Applying this distinction, the court found that Pekin had no duty to defend Lorenz against the claims of misrepresentation: "To be liable, Lorenz must have asserted a false statement, and such an assertion requires a degree of volition inconsistent with the term

---

[2] The individual defendants have submitted affidavits to this effect. Even if such extrinsic evidence was admissible–and it isn't, *Doyle v. Engelke*, 219 Wis. 2d 277, 284 n.3, 580 N.W. 2d 245 (1998) (court confines analysis to four corners of complaint when determining duty to defend)–the lack of intent to harm is immaterial to the question whether there was an "occurrence" under the policy. Accordingly, the affidavits make no difference to the analysis.

accident." *Id*. at ¶19. That Lorenz's assertion might have been prompted by his negligence in completing the Real Estate Condition report did not make its conduct an accident:

> Lorenz may have made a mistake of fact and/or error in judgment, but it later acted with volition. It is clear that Lorenz intended to give Everson information as to whether the property was within the 100-year flood plain. What happened here, stripped to its essentials, is that an "action," not an "accident," of Lorenz gave Everson the misleading information. Even if there was a mistake made in filling out the Real Estate Condition Report, and that mistake induced reliance, the decision to give Everson the report is not an "accident" within the meaning of the policy.

*Everson*, 280 Wis.2d at 16, 695 N.W.2d at 305, ¶ 22.

In reaching its conclusion, the court relied in part on the Seventh Circuit's decision in *Red Ball Leasing, Inc. v. Hartford Accident & Indemnity Co.*, 915 F.2d 306 (7th Cir. 1990). In that case, the insured financed the sale of four trucks to a lessee, then later repossessed the trucks based on its mistaken belief that the lessee had defaulted on his payments. The insurance company refused to defend Red Ball in a suit by the truck owner, arguing that the conversion was not an "accident" triggering such a duty. After a thorough examination of cases from other jurisdictions, the court agreed, finding that the conversion, even though based upon the erroneous belief that the repossession was lawful, was volitional and not accidental. As the court explained:

> A volitional act does not become an accident simply because the insured's negligence prompted the act. Injury that is caused directly by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point. The former injury may be an accident. However, the latter injury, because it is intended and the negligence is attenuated from the volitional act, is not an accident. In this case, it is clear that Red Ball intended to repossess the Luttrell trucks. A plain reading of the policy discloses that what must be "neither expected nor intended" is the *damage*; knowledge of the legal consequences is not material. Even if the mistake in Red Ball's accounting procedures triggered the chain of

> events that ultimately led to the repossession, the decision to take the trucks-an intentional act of Red Ball-is not an "accident" under the terms of the insurance policy. Therefore, we conclude that the injury was not covered by the property damage provision of the insurance contract.
>
> *Red Ball Leasing*, 915 F.2d at 311-312 (citations and footnotes omitted, emphasis in original).

Another case cited with approval by the Wisconsin Supreme Court in *Everson* is *Mindis Metals, Inc. v. Transportation Ins. Co.*, 209 F.3d 1296 (11th Cir. 2000), a case that, coincidentally, also involves the erroneous scrapping of rail cars. In *Mindis Metals*, the plaintiff was a metal scrapping company that bought railcars from the general manager of Georgia Central Railroad, cut them up and used for scrap. Unbeknownst to the scrapping company, the general manager was stealing the railcars from the railroad and keeping the sales proceeds for himself. After settling with the railroad, the scrap company sued its insurer, arguing that it had a duty to provide coverage under the terms of a commercial general liability insurance policy that provided coverage for property damage caused by an "occurrence," which in turn was defined as an "accident." Relying on *Red Ball Leasing* and other cases, the court found that even though the scrap company might have been mistaken about its property rights, that mistake was not an "accident" under the policy:

> . . . Plaintiff intended to damage the railcars–it was cutting them up for use as scrap metal. This action may have occurred due to a mistake as to ownership, but there was nothing "accidental" about it. Consequently, Defendants had no duty to defend . . ..
>
> *Mindis Metals, Inc.*, 209 F.3d at 1301.

These cases make plain that the complaint in this case fails to allege an "occurrence" as that term is defined in the parties' insurance contract. As in *Everson*, *Red Ball Leasing* and *Mindis*

*Metals*, the conduct in which defendants are alleged to have engaged—the declaration of the railcars as abandoned, the solicitation of bids for their destruction and their facilitation of that process–were intentional, volitional acts. The fact that defendants did not intend to violate anyone's rights or made a mistake as to who owned the cars does not make their conduct accidental. *Accord Gatlin v. Delux Entertainment, LLC*, 2010 WL 1904984, 3 (E.D. Wis. 2010) (because doormen acted with volition in refusing to allow black plaintiffs to enter nightclub, plaintiff's harm did not result from an "occurrence" even if doormen did not intend to discriminate against plaintiffs).

The cases cited by defendants at pp. 14 -15 of their brief are not on point. The policies at issue in those cases included a clause in the definition of "occurrence" that defined the term as "an accident . . . which results in Personal Injury or Property Damage *neither expected or intended from the standpoint of an Insured*." (emphasis added). The definition of "occurrence" in this case contains no such modifier.

Contrary to defendants' suggestion, *Everson*'s holding (that volitional acts are not accidental) was not retracted or limited in *United Co-Op. v. Frontier FS Co-Op.*, 2007 WI App 197, 304 Wis. 2d 750, 738 N.W.2d 578 (App. 2007). As a starting point, it is not up to an appellate court to retract or limit the Wisconsin Supreme Court's holdings. In *United Co-op*, the insured, Frontier, sold property and equipment to United, warranting that Frontier had never used the property for activities that might have caused soil or groundwater contamination and promising to indemnify United for any breach of warranty or claim arising out of Frontier's operations, including environmental liability. Fifteen years later, United discovered significant soil

9

contamination on the property. When Frontier refused to pay United's cleanup costs, United sued Frontier and its insurers, alleging a breach of contract.

The insurers argued that they had no duty to defend Frontier because the complaint failed to allege an "occurrence." *Id*. at ¶10. According to the insurers, the pertinent event for the occurrence analysis was Frontier's refusal to indemnify United because it was the event that formed the basis of United's claim. *Id*. The circuit court agreed, and, relying on *Everson*, found that the failure to indemnify was a volitional act and therefore not an "occurrence." *Id*. at 17. The court of appeals reversed, holding that the pertinent event was not the failure to indemnify but the soil contamination that allegedly occurred while Frontier owned the property, which the insurers had not disputed was an "occurrence." *Id*. at ¶13. In reaching its conclusion, the court distinguished *Everson*:

> [I]n *Everson*, the parties expressly or implicitly agreed that the insured's misrepresentation was the pertinent event to analyze for purposes of determining whether there was an occurrence. Thus, the *Everson* court had no reason to address whether the misrepresentation was the only possible event for purposes of determining whether there was an occurrence. *Everson* does not provide guidance as to which event or events are pertinent for purposes of determining whether an "occurrence" is present when the parties dispute that topic.
> 
> *Id*. at ¶ 17.

The *United Co-op* court offered its view that the insureds in *Everson* and similar cases were forced to focus their "occurrence" arguments on their alleged misrepresentations rather than on some other event that arguably caused the property damage because there was no such other event that could be attributed to the insured. *Id*. at 19. The court summed up its thinking:

> [T]o the extent the results in [*Everson* and other Wisconsin cases] can be explained by a generalization, that generalization would

10

> seem to be this: When the asserted basis for an insured's liability is a misrepresentation, and the misrepresentation cannot be said to have caused any "property damage" (or bodily injury) as that term is defined in a typical CGL or other liability policy, the misrepresentation is not an occurrence and the insured will not have coverage.

*Id*. at ¶ 19.

Defendants in the instant case highlight this summation, but it does not advance their position. Nothing the court said in *United Co-op*–including its dicta attempting to harmonize precedent–supports defendants' contention that *Everson* must be limited to "its very specific facts." The question on appeal in *United Co-op* was whether the district court had correctly focused on the insured's words as opposed to its acts, not whether particular conduct was volitional. *Everson*'s holding that both the means and the harm must be unintentional for a loss to be "accidental" remains the law in Wisconsin.

Taking a different tack, defendants argue that under *United Co-op*, the proper focus of the "occurrence" analysis in this case should not the dismantling and salvaging of the railcars, but rather on the defendants' earlier decision in August 2005 "to declare the railcars abandoned and [take] immediate possession of them." According to defendants, this is the event that arguably led to plaintiff's property damage. Like most of defendants' other arguments,[3] this one is stillborn because it rests on the incorrect assertion that conduct undertaken without intent to cause harm is "accidental." Def.'s Br. in Opp., dkt. 27 at 14 (arguing that defendants' August 2005 decision to dispose of railcars "cannot be characterized with the necessary intent to cause harm sufficient to defeat coverage").

---

[3]*See, e.g.,* defendants' arguments concerning "deliberate indifference" and the "ostrich" instruction. Dkt.27 at 11, 17.

11

This leaves defendants' contention that the policy's "Governmental Entity Exclusion" creates coverage for violations of federal rights. *Id*. at 15-16. This provision states:

> This insurance does not apply to any claims for damages, other than damages for "bodily injury," "property damage" or "personal and advertising injury," arising from any actual or alleged:
>
> a. Error, misstatement or act or omission; or
>
> b. Neglect or violation of any federal or state civil rights; or
>
> c. Breach of duty including misfeasance, malfeasance, or non-feasance
>
> by the insureds in the discharge of their duties for the public entity, individually or collectively.

According to defendants, the "other than" language in this provision gave them a reasonable expectation that they were covered for the claims asserted by Burkhardt.

As Sentry notes, however, an exception to an exclusion simply restores coverage that otherwise exists under the initial grant of coverage; it does not create coverage that does not otherwise exist. *See, e.g., American Family Mutual Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶24, 268 Wis.2d 16, 33, 673 N.W.2d 65, 73 ("An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies."); *Silverton Enterprises, Inc. v. General Casualty Co. of Wisconsin*, 143 Wis.2d 661, 671-672, 422 N.W.2d 154, 158 (Ct. App. 1988) ("A reservation exception to an exclusion does not, standing alone, create coverage unless the claim is cognizable under the general grant of coverage.") (quoting *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis.2d 259, 265, 371 N.W.2d 392, 395 (Ct. App. 1985)); Arnold P. Anderson, *Wisconsin Insurance Law*, ch. 5, p. 24 (6th ed. 2010) ("Care should be taken to make sure coverage is

determined based on a policy's coverage provisions and not by exceptions to exclusions . . . exclusions have relevance only when liability is provided under the coverage provisions.").

Defendants cite no authority that refutes this general rule. Instead, they appear to argue that the exception to the exclusion renders the policy "contextually ambiguous." *See, e.g., Folkman v. Quamme*, 2003 WI 116, 264 Wis.2d 617, 633, 665 N.W.2d 857, 865 (on occasion, clear and unambiguous policy provision may be found ambiguous in context of entire policy). However, apart from making a general argument that the court ought to apply the "interpretive rules" for insurance contracts, defendants make no attempt to show that a reasonable person reading the policy would have believed that it covered property damage not caused by an "occurrence."

It is irrelevant that defendants Molepske and Wescott personally might have believed that the governmental entity exclusion covered them for alleged civil rights violations like those pled by Burkhardt. *See* dkt. 30, ¶7 and dkt. 31, ¶7; *Bertler v. Employers Insurance of Wausau*, 86 Wis. 2d 13, 17, 27 N.W. 2d 603 (1978) (court uses objective not subjective test when construing insurance contracts). Defendants' assertion that a ruling against them means that the policy "doesn't cover anything" might be a tad hyperbolic in light of the policy's comprehensive scope. In any event, it is well-settled that a public liability insurance policy "may well not be coextensive with [the insured's] legal liability to respond in damages on every occasion." *Id*. at 17. (citation omitted). Absent any persuasive argument from defendants that the policy is ambiguous from the standpoint of a reasonable person, there is no basis for this court to find coverage in the governmental acts exception to the exclusion.

13

In sum, there is no initial grant of coverage because defendants' alleged conduct was not accidental. Accordingly, Sentry has no duty to defend or indemnify defendants in this case.

## ORDER

IT IS ORDERED that:

1. The motion of Sentry Insurance A Mutual Company for an order declaring that it has no duty to defend or indemnify the City of Stevens Point, Gary Wescott, Louis Molepske and Joseph Euclide against the allegations made by plaintiff in this lawsuit is GRANTED.

2. Defendants' motion for leave to file a sur-reply (dkt. 36) is GRANTED.

3. Defendants' motion to strike Sentry's reply to the sur-reply (dkt. 39) is DENIED.

Entered this 20th day of September, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge